STEPHEN YAGMAN (SBN 69737)
JOSEPH REICHMANN (SBN 29324)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| W. LOCKETT,<br><br>Plaintiff,<br><br>v.<br><br>**MICHEL REY MOORE, BEATRICE GIRMALA, BLAKE H. CHEN, KELLY MUNIZ, RÁFAEL RAMIREZ, STEVEN EMBRICH, ERIC MICHAEL GARCETTI, GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RÓDRIGUEZ, MARQUEECE-HARRIS-DAWSON, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO, WILLIAM J. BRIGGS, II, EILEEN MAURA DECKER, DALE EVAN BONNER, MARIA LOU CALANCHE, STEVEN LLOYD SOBOROFF, BERNARD C. PARKS, WILLIAM JOSEPH BRATTON, CHARLES LLOYD BECK, RICHARD JOSEPH RIORDAN, JAMES KENNETH HAHN,** and **ONE HUNDRED UNKNOWN NAMED DEFENDANTS, 1-100,**<br><br>Defendants. | **COMPLAINT**<br><br>(LAPD Police Brutality, Thuggery, Reign of Terror on the Homeless, For Damages and Injunctive Relief, 42 U.S.C. § 1983, 18 U.S.C. § 1961, *et seq.*)<br><br><br><br>**JURY DEMAND** |

Plaintiff makes the following allegations, in support of the this complaint:

//

1

**JURISDICTION AND VENUE**

1. Plaintiff, asserts federal claims, under 42 U.S.C. § 1983 (civil rights) and 18 U.S.C. § 1961-64 (RICO) against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of the federal claims, and defendants' conduct affects and interferes with interstate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

3. Plaintiff is a person who has been subject to LAPD police brutality and thuggery; and defendants are: **MICHEL REY MOORE,** LAPD Chief of Police, **BEATRICE GIRMALA,** Asst. LAPD Chief, Director, Office of Operations, **BLAKE H. CHEN,** Deputy LAPD Chief, Operations West Bureau, **KELLY MUNIZ,** LAPD Patrol Commanding Officer, Pacific Area, **RAFAEL RAMIREZ,** LAPS Commander, West Bureau, **STEVEN EMBRICH,** LAPD Captain, Commander, Pacific Division, **UNKNOWN STEVENS,** LAPD Watch Commander, Pacific Division, **SOUTHARD #21984,** LAPD Desk Officer, Pacific Division, **MALDANADO #43223,** LAPD Officer, **UNKNOWN ROBLES,** LAPD officer; **ERIC MICHAEL GARCETTI,** City of Los Angeles' mayor; **GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODRIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO,** who are City of Los Angeles City Council members; **WILLIAM J. BRIGGS, II, EILEEN MAURA DECKER, DALE EVAN BONNER, MARIA LOU CALANCHE,** and **STEVEN LLOYD**

2

**SOBOROFF**, who all are members of the City of Los Angeles Board of Police Commissioners; **BERNARD C. PARKS,**[1] **WILLIAM JOSEPH BRATTON,** and **CHARLES LLOYD BECK**, who are former City of Los Angeles Chiefs of Police; **RICHARD JOSEPH RIORDAN**, and **JAMES KENNETH HAHN**, who are former City of Los Angeles Mayors; and **ONE HUNDRED UNKNOWN NAMED DEFENDANTS, 1-100** (all of whom are referred to collectively as "defendants"), and the **UNKNOWN NAMED DEFENDANTS**, whose true identities presently are unknown, who participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions that resulted in the wrongs hereinbelow alleged.

4. Defendants each and all are sued in both their individual capacities and in their official capacities, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which defendants are sued in their official capacities only; and in their individual capacities only for the RICO violations hereinbelow alleged.

5. Plaintiff is a person who has been brutalized and subjected to both constitutional violations and RICO violations by defendants.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies of the LAPD.

---

[1] Parks is sued both in his capacities as former Chief of Police and former City Council member.

## ALLEGATIONS COMMON TO EACH COUNT

7.  Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8.  All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiff, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. a. On Aug. 8, 2021, at approximately 5:00 a.m., plaintiff had just gotten home from the veterinary emergency clinic for her dog, who had become suddenly paralyzed, at which time a man who lives in an RV a few RVs behind plaintiff's RV, came running up to plaintiff, screaming that he had been shot.

b. Plaintiff immediately drove the man to the emergency room, and came right back to be with her ill dog. By the time plaintiff got back, the area was already roped off by the LAPD, so plaintiff parked her car just outside roped-off area, and proceeded to try to get to her dog in her RV.

c. The police yelled at her that she could not cross the line and plaintiff told them that she needed to get to her dog because he had been traumatized from his sudden paralysis, and would no doubt try to walk, to find plaintiff for comfort.

d.  Plaintiff explained to the police that she had just left 10 minutes before, to drop someone at the hospital.

e. The police followed plaintiff, to ask questions her about the shooting, and plaintiff told them that she had no information about the shooting, I did not see or

4

hear it, and that plaintiff simply had been approached by a neighbor in need of a ride to the hospital, because plaintiff was the only person in the RV-homeless encampment with a working car, and that plaintiff could not ask the man whom she was taking to the hospital any questions because he had been shot in the neck and could not talk.

 f. The LAPD officers continued to try to get information from plaintiff that plaintiff did not have, as she repeatedly told them.

 g. When we finally got to plaintiff's RV, plaintiff I told the LAPD officers that plaintiff was going to lie down with plaintiff's dog, so goodnight.

 h. The LAPD officers returned about 10 minutes later, and asked plaintiff to accompany them to the LAPD Pacific Division police station, for more questioning.

 i. Plaintiff told them plaintiff would rather not go with them, that plaintiff's dog was newly-paralyzed and traumatized, and that plaintiff needed to be by her dog's side, so he would not attempt to walk, and that plaintiff already had told the LAPD officers everything that plaintiff knew about the shooting, which was nothing.

 j. The LAPD officers stated that going with them would not take longer than 10 minutes, and that plaintiff must come with them.

 k. Plaintiff did not agree to accompany them.

 l. The LAPD officers ordered plaintiff to turn around so they could handcuff plaintiff.

 m. The LAPD officers stated that plaintiff was not under arrest, but plaintiff did not feel free to leave or not to comply with their orders.

 n. The LAPD officers insisted that plaintiff was not under arrest, and that it was just standard procedure to handcuff plaintiff.

o.  In the meantime as the LAPD officers and plaintiff all were approaching the LAPD police cruiser there were news crews just arriving, and, seeing plaintiff in handcuffs, they began taking plaintiff's picture, along with a news feeds, and a news helicopter was filming plaintiff being led in handcuffs into the LAPD cruiser.

p.  When the LAPD officers and plaintiff approached the LAPD cruiser, the LAPD officers started reading plaintiff plaintiff's constitutional rights.

q. Plaintiff stated to the LAPD officers that "this doesn't seem like procedure to me; call me retarded, but this seems like an arrest."

r.  The LAPD officers again stated that plaintiff was not under arrest.

s.  When the LAPD officers and plaintiff arrived at the Pacific Division police station, plaintiff was led to the watch commander, who asked if plaintiff knew why plaintiff was there,  and whether plaintiff had any questions, to which plaintiff replied that plaintiff had no idea why plaintiff was there in handcuffs and asked when plaintiff could go home to plaintiff's dog.

t.  The watch commander stated that "you are here as a possible accomplice to an attempted murder investigation," to which plaintiff responded "You are fucking kidding me, right? All I did was drive someone whom I barely even know to the hospital so he didn't die. How the fuck do you have me as an accomplice? And, not only that but why did the LAPD officers tell me they only needed me for a few questions, that I could only answer at the station, for some unknown reason? So you're telling me they lied to get me into their cruiser, and are trying to charge me as an accomplice?"

u. The watch commander said the detectives would talk to plaintiff and that plaintiff should sit tight. An LAPD officer then tried to take plaintiff's jewelry from plaintiff's person, and to fingerprint plaintiff, but plaintiff yelled at the female officer so loudly that the officer relented.

6

v.  Plaintiff then was handcuffed to a bench.

w.  When five minutes started turning into 20 minutes, plaintiff began to scream, and plaintiff reminded LAPD officers that plaintiff had a very scared dog waiting for plaintiff and that if the dog tries to get up and finds plaintiff the dog will be harmed.

x.  Plaintiff screamed that plaintiff had done was to assist someone who was shot, and was this how the LAPD treats people who help someone in need?

y.  Plaintiff screamed that if something were to happen to plaintiff's dog, plaintiff would sue them.

z.  Plaintiff screamed for 20 minutes straight, until LAPD detectives came to get plaintiff for questioning.

aa.  They began their questioning and had no new and improved questions for me, as they had promised to be the reason plaintiff had to be pulled away from plaintiff's ailing my dog.

bb.  Plaintiff told them plaintiff was furious at this point and asked them what made them think their time is so much more valuable than plaintiff's time?

cc.  Plaintiff told them they didn't know anything about plaintiff and what plaintiff did with plaintiff's time, so why would they assume plaintiff had nothing better to do than waste more of it there, answering the very same questions plaintiff already had answered at plaintiff's RV, at least five times previously.

dd.  They had no reply to this, and just kept on with the same questions.

ee.  They were playing the good cop/bad cop routine, and the good cop told me that this was very serious, and that a few of the guys who had been shot probably weren't going to make it.

ff.  Plaintiff stated that plaintiff was sorry to hear that, but that plaintiff still had no new information to help them.

gg. The bad cop was looking at plaintiff me like plaintiff was scum and that she did not believe a word plaintiff was saying.

hh. Plaintiff was told that if they found out plaintiff was lying it was going to go all bad for plaintiff.

ii. Plaintiff said she was not lying.

jj. They then asked if they could search plaintiff's car and RV, to which plaintiff felt duress to state that the car could be searched, but refused the RV search, and told them that they cannot touch the RV without plaintiff being there, because plaintiff's dog would get upset, and plaintiff feared LAPD officers would harm her dog.

kk. Plaintiff knew plaintiff did not have to give consent at all and did not give voluntary consent for LAPD officers to search plaintiff's RV.

ll. By this time, plaintiff had been held for at least an hour.

mm. Plaintiff had been taken away before she could lock her RV.

nn. They called the detectives at the site and those detectives apparently assured them that they had "a friend of mine" inside my RV with my dog watching it.

oo. Plaintiff learned that the "friend" in plaintiff's RV was a girl plaintiff barely knew, and that she was in plaintiff's RV, with all my cash and credit cards, and that the dog in plaintiff's RV with her was not plaintiff's dog, but her dog.

pp. Plaintiff finally was released about one and one-half hours later.

qq. Plaintiff got home to her RV, to find that her RV had been "toosed" by the LAPD.

rr. Plaintiff's laptop computer and $300 both were missing.

ss. Plaintiff's neighbors told plaintiff that LAPD detectives were asking if plaintiff was selling fentanyl.

tt.  Plaintiff's "reward" from the LAPD for being a good citizen to my neighbor was to be taken away from plaintiff's traumatized dog (which I found out later had tried to get up to find me, and was crying in pain but plaintiff I wasn't there to soothe him) to answer questions plaintiff already had answered, have the police assign someone plaintiff did not know or trust to "watch" plaintiff's RV for an hour and a half, giving them plenty of time to clean plaintiff me out, toss plaintiff's RV, even though plaintiff did not give them consent to search without plaintiff there, and not even bother to pick up their mess, accuse me of selling a drug to plaintiff's neighbors, and have me all over the news and internet that night, so that plaintiff's daughter and grandchildren could see that.

uu.  Every part of this unnecessary treatment at the hands of the LAPD was inhumane and illegal. If plaintiff had been a "normal" person who lived in a house with a white picket fence and a dog named "Boo" none of this would have happened, and plaintiff knows this because plaintiff once had been this "normal" person, and though plaintiff never had been in an exact situation as this one, plaintiff had been in situations similar to it, and was not treated like a drug dealing, lying scumbag, who plays accessory to a shooting, and then drives the victim of the said shooting to the hospital.

vv.  On Sept. 17, 2021, LAPD detectives came banging on plaintiff's door, when plaintiff was very ill, and they still forced plaintiff to come outside (which was without consent and was another unlawful arrest) to tell plaintiff that they still were investigating the shooting and that they recently had been told by a witness that plaintiff was at the scene of the shooting.

ww.  Plaintiff told them that they were full of shit, and that plaintiff would take a polygraph, and asked them why they "tossed" plaintiff's house and accuse plaintiff of being a drug dealer?

xx.  They said they, personally, did not do that and I could take my complaints to the station (which would be another huge waste of plaintiff's time, because the paperwork would not make it past the trash can under the front desk) and that plaintiff would be seeing them again very soon if they found out plaintiff was lying and that plaintiff would be arrested, again, as an accessory to attempted murder.

10. The non-LAPD defendants each and all are legally liable for all of this conduct because they caused it, ratified it, condoned it, or otherwise made it possible, by their actions and/or inactions, and caused and/or create LAPD policies, practices, procedures, and/or customs that caused the LAPD officers' unconstitutional conduct.

## COUNT ONE

### (Against All Defendants, 42 U.S.C. § 1983)

11.  Plaintiff realleges specifically the allegations set forth in averments 9 & 10, hereinabove, and, by virtue thereof, all defendants are liable to plaintiff, pursuant to 42 U.S.C. 1983, for violation of plaintiff's Fourth Amendment rights, not to be subjected to unreasonable searches, seizures, stops, and arrests.  There was no warrant, reasonable suspicion, probable cause, or consent for defendants' detentions and arrests of plaintiff, nor for the searches of plaintiff's motor vehicle or RV.

## COUNT TWO

### (Against All Defendants for Conspiracy Under § 1983)

12.  Plaintiff realleges specifically hereat the allegations set forth at averments nine through 11, hereinabove, and by virtue thereof, all defendants also are liable to plaintiff for conspiracy to violate Fourth Amendment rights and Fourteenth Amendment rights, pursuant to § 1983, because they had an agreement or understanding that the wrongs perpetrated would be perpetrated.

## COUNT THREE

### (Against All Defendants, Under Sec. 1983)

13. All defendants are liable to all plaintiff because they had and have, and foster, a policy, practice, procedure, and custom of Fourth Amendment violations by members of LAPD, which policy, *etc.*, in violation of the Fourth Amendment, was a moving force that caused the violation of the plaintiff's rights, as alleged herein; and also the City Council and mayoral defendants are liable because they have a custom of improperly indemnifying, and of conspiring to indemnify, LAPD officers for punitive damages assessed against those officers by juries in civil rights cases, because that practice was a moving force that caused the violations of the plaintiffs' rights as alleged herein.

## COUNT FOUR

### (Declaratory Relief Against All Defendants)

14. Pursuant to 28 U.S.C. §§ 2201-02, plaintiff is entitled to a declaration by the court that there is a custom of Fourth Amendment violations on the part of the Los Angeles Police Department, that said custom is fostered by lack of proper training, lack of proper supervision, lack of proper investigation of alleged police misconduct and complaints, lack of imposition of proper and adequate discipline against police officers, and the rubber-stamping of indemnifications of awards of punitive damages against LAPD officers by juries in civil rights cases.

## COUNT FIVE

### (Injunctive Relief Against All Presently-Serving Defendants)

15. Pursuant to 28 U.S.C. § 1651, "The All Writs Act," and pursuant to § 1983, plaintiff is are entitled to and requests an injunction against this group of defendants, enjoining them from the following activities, because, it is alleged:

(1) Plaintiff is suffering and will suffer ongoing, pervasive, and irreparable harm in the form of violations of the Fourth Amendment, as a result of the LAPD's

terroristic, thuggish, murderous, and barbarous tactics and conduct, with a likelihood of substantial and immediate, irreparable injuries, which is caused by and continues to be caused by intentional and/or deliberately indifferent conduct of defendants, and a pervasive pattern of misconduct as alleged herein, which flows from a custom or plan as alleged herein, all authorized, ordered, condoned, tolerated, acquiesced in, approved of, and ratified by defendants;

(2)  There is a direct link between the non-police officer defendants' conduct and LAPD custom and practice, and the injuries suffered and continued to be suffered by plaintiff;

(3)  Plaintiff repeatedly is subjected to Fourth Amendment violations;

(5) Plaintiff is subjected to being harmed by LAPD officers at any and all times;

(6)  There have been repeated instances over many, many years, of violence, murder, torture, and barbarism, all Fourth Amendment violations, and serious bodily injury and unconstitutional arrests, visited by LAPD officers;

(7)  There are continuing and present adverse affects and effects of LAPD officers violating the Fourth Amendment, and they cause the threatened injuries to be real and immediate;

(8)  Plaintiff credibly alleges that her Fourth Amendment rights will be violated by LAPD officers; and,

(9)  There is a real and immediate threat of serious injury and of death, which presents a justiciable controversy.

Therefore, injunctive relief is sought to prevent defendants from engaging in the following conduct:

>Violation of the Fourth Amendment by LAPD offices;

>Rubber-stamping indemnifications of punitive damages levied against LAPD officers by juries in civil rights cases;

12

>Failing properly train LAPD officers with respect to the limitations the United States Constitution places on police under the Fourth Amendment;

>Failing properly investigate any claims of Fourth Amendment violations by any LAPD officer;

>Failing properly discipline any LAPD officer who violated the Fourth Amendment;

Prohibiting defendants:

>From indemnifying for an award of punitive damages against any LAPD officer who is found by a jury to have violated the Fourth Amendment;

**COUNT SIX**

(Against All Defendants Under The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq.*)

16. The racketeering activity herein alleged is obstruction of justice, and the obstruction of justice occurred by defendants preventing plaintiff from exercising her federal constitutional rights, as set forth hereinabove.

17. Defendants unlawfully have engaged in the racketeering activity set forth in the preceding averments on thousands of occasions during the past 10 years, and from time immemorial, through a pattern of racketeering activity, and have acquired directly and indirectly control of an enterprise, the LAPD, which has engaged in and whose activities affect interstate commerce.

18. Defendants, who either are employed by or who are associated with, that racketeering enterprise, have conducted that enterprise through a pattern of racketeering activity, as set forth hereinabove.

19. Defendants unlawfully have conspired, as set forth hereinabove, to violate the provisions of 18 U.S.C. §§ 1962(b) and (c).

20. Plaintiff was injured in her business, property, and/or employment by reason thereof, and plaintiff is entitled to damages, to be trebled, and plaintiff is entitled to injunctive relief as requested hereinabove.

13

1  //

2  //

3  //

4  //

5

6

## COUNT SEVEN
(Against The LAPD Officer Defendants At The Scenes Of The Violations)

21. These defendants are liable under the Fifth and Sixth Amendments of the United States Constitution for depriving plaintiff of his right to consult with his legal counsel and of obstruction of justice.

## COUNT EIGHT
(Cal. Civil Code §52.1, The Tom Bane Act)

22.  The Bane Act makes liable under California law any person who intentionally interferes with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights, and here the LAPD at-the-scenes officers acted with reckless disregard for plaintiff's constitutional rights.

23. These LAPD officers' conduct was unreasonable and was a substantial factor in causing plaintiff's harms and damages, and the defendants in their official capacities are liable for plaintiff's injuries.

24.-199.  Reserved.

## COUNT NINE
(Violation of *Jus Cogens* International Law)

200.  Defendants' actions, as set forth hereinabove, are in clear violation of and are prohibited by the *jus cogens,* peremptory norms of international law that, among other things, prohibit unlawful takings into custody by government.

201.  Such *jus cogens,* peremptory norms are the law of the land in the United States of America, and plaintiff is entitled to damages for the harm caused to them by defendants' violations of *jus cogens*, peremptory norms, and to

declaratory and injunctive relief, because the Ninth Circuit, in *Siderman v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), has held these prohibitions to be *jus cogens* norms.  That is, plaintiff claims defendants are liable to plaintiff for subjecting her to unlawful detentions, in violation of *jus cogens* peremptory norms of international law, whose violation, in turn, is a violation of the law of the United States of America, under the Supremacy Clause of the United States Constitution.

**COUNT TEN**

(Violation of *Jus Dispositivum* International Law)

203.  Defendants' actions, as set forth hereinabove, are in clear violation of the *jus dispositivum* treaty obligations entered into by the United States of America, and which obligations, pursuant to Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), are "the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding."

204.  The specific treaties whose provisions prohibit unlawful detentions and cruel and unusual  punishments, to which the United States of America is a signatory, and whose provisions were violated by defendants, are:  Universal Declaration of Human Rights, G.A. Res. 217 (A) (III), U.N. Doc. A/810 at 71 (1948); the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452 (1975); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, annex 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51, art. 1 (1984); Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, G.A. Res. 43/173, 43 U.N. GAOR Supp. (No. 49), U.N. Doc. A/43/49, at 297, Principle 5 (1988); the American Convention on Human Rights, O.A.S. Treaty Series No. 36, at 1, OEA/Ser. L./V/II.23 doc. Rev. 2, Art. 5); International Covenant on Civil and Political Rights, G.A. Res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at

52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, Art. 7; and, the European Convention for the Protection of Human Rights and Fundamental Freedoms, 213 U.N.T.S. 222, Art. 3, and by engaging in the conduct alleged, defendants violated those treaties and conventions, and thereby violated the laws of the United States of America, through the Supremacy Clause.

205.   By virtue of the violations of the provisions of these treaties, plaintiff is entitled to recover nominal damages and punitive damages from defendants, and to declaratory and injunctive relief.

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. Compensatory damages for all non-RICO violations;

2. Compensatory damages for all RICO violations, to be trebled;

3. Punitive damages on all non-*Monell* claims, sums to be determined by a jury, and as a percentage of the net worth of each defendant, in sums sufficient to deter future misconduct, and not less than $1,000,000.00 per defendant;

4. Injunctive relief, according to law;

5. The costs of action and interest;

6. Attorneys' fees; and,

7. Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

### YAGMAN + REICHMANN, LLP

By:  /s/  Stephen Yagman
**STEPHEN YAGMAN**